***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Jones and upon his resignation, Deputy Commissioner Donovan. Based upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner in part and REVERSES the Deputy Commissioner in part.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant Key Risk Management Services was the carrier on the risk.
3. The employee-employer relationship existed between the parties on October 11, 2001.
4. Plaintiff's average weekly wage was $438.41, which yielded a compensation rate of $292.29 per week, based on the Form 22.
5. The issues for determination are:
a. Whether plaintiff's injury of October 11, 2001as a result of an episode of violence in a public school entitles plaintiff to benefits under the Act and/or pursuant to N.C. Gen. Stat. § 115C-338?
b. Whether plaintiff is entitled to attorney's fees and costs pursuant to N.C. Gen. Stat. § 97-88.1?
7. The parties stipulated the following documentary evidence:
a. Stipulated Exhibit 1 consists of plaintiff's medical records
b. Stipulated Exhibit 2 consists of Industrial Commission Forms
c. Stipulated Exhibit 3 consists of Key Risk reports
d. Stipulated Exhibit 4 consists of correspondence
e. Stipulated Exhibit 5 consists of plaintiff's Notice pursuant to N.C. Gen. Stat. § 115C-338
f. Stipulated Exhibit 6 consists of defendant's discovery responses
g. Stipulated Exhibit 7 consists of plaintiff's absence report
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 42 years old. She is a high school graduate and obtained a certificate for Early Childhood Education from Cape Fear Community College. Plaintiff worked as a volunteer for Noble Middle School for two years, then on September 3, 1998, obtained employment at the school as a Teacher's Assistant in Life Skills Two Classes.
2. Plaintiff's job duties involved providing support for the teacher in the instruction of approximately 20 students. The students were learning disabled, physically handicapped and emotionally disabled. Plaintiff's individual duties included participation in and direction of all aspects of the learning experience of the students, both as a group and individually.
3. On October 11, 2001, plaintiff and another teacher's assistant were in charge of a special education class while the primary teacher was away from the room. An autistic student who was 14 years old at the time of the incident, approximately 5'6" tall and weighed approximately 180 pounds, became violent and wanted to leave the classroom. Plaintiff was instructed that in crisis intervention she was to stand behind the student and hold the student's arms. Plaintiff, who is approximately 5'4" tall, unsuccessfully attempted to restrain the student. Plaintiff was pushed by the student into the corner of a slate top desk and fell to the floor, sustaining injuries to her shoulders, arm, hip, pelvic joint and tailbone. A male teacher from another classroom entered the room and successfully restrained the student.
4. Plaintiff reported her injury to the supervising teacher, Mr. Smith, and to the principal, Mr. Furr. A Form 19 was completed October 11, 2001.
5. Plaintiff presented to MEDAC on October 11, 2001 with complaints of discomfort and soreness in her left hip, shoulder and neck. She was diagnosed with an acute lumbar and pelvic injury and an orthopedic follow-up was recommended to rule out a possible herniated disc. Plaintiff returned to full duty work as of October 15, 2001, with a lifting restriction of 10 pounds and the admonition that she limited any activity that caused or increased her pain.
6. Plaintiff returned to work on October 15, 2001.
7. Plaintiff was referred to Dr. Albert W. Marr with Wilmington Orthopedic but was unable to obtain an appointment until December 31, 2001. In the interim, plaintiff presented to Coastal Chiropractic Center on October 12, 2001 and again on October 23, 2001. Plaintiff did not return for further treatment due to defendants' refusal to approve the treatment.
8. When plaintiff presented to Wilmington Orthopedic she was continued on medication and referred to a psychiatrist, Dr. Alan Tamadon. In addition, at the direction of Wilmington Orthopedic, plaintiff underwent physical therapy with HealthSouth from December 21, 2001 until April 2, 2002, when therapy was discontinued upon recommendation by plaintiff's treating physician.
9. On April 5, 2002, plaintiff presented to Dr. Tamadon and was diagnosed with interscapular strain, cervical strain, lumbrosacral strain and disturbance of skin sensation in the left upper extremity and myofascial pain. Dr. Tamadon ordered an MRI of the neck and low back, which was performed on April 8, 2002. The MRI showed plaintiff's back was normal. The MRI of plaintiff's neck showed disk osteophyte complexes at C4-5, a disk bulge at C5-6 with spur, and a paracentral disk osteophyte complex at C6-7 on the right. Dr. Tamadon opined that plaintiff's condition was not new and the MRI did not show any acute events. He referred plaintiff to orthopedic surgeon, Dr. Foster to see if her abnormality required surgery.
10. On March 1, 2002, the Industrial Commission approved a one-time examination of plaintiff by orthopedic surgeon Dr. Patrick M. Curlee. Dr. Curlee was subsequently authorized as plaintiff's treating physician. Plaintiff presented to Dr. Curlee on April 15, 2002 with complaints of neck and low back pain. Dr. Curlee's examination revealed a diminished range of motion of the cervical spine and some of motion of the lumbar spine, some tenderness in both the cervical spine and the lower back and over her left buttock.
11. Dr. Curlee diagnosed plaintiff with chronic cervical strain, lumbar strain and possible left-sided facet joint injury at the lumbosacral junction. He recommended an MRI of the lumbar and cervical spine that was already scheduled for the next day.
12. Plaintiff returned to Dr. Curlee on 5 July 2002, with reports that her neck pain had improved following at-home physical therapy but that she continued to experience lower back and left buttock pain. Plaintiff's MRI showed overall normal alignment, with degenerative disk disease at the L5-S1 level. There were no herniations or neural compression and no other significant abnormalities noted. Dr. Curlee diagnosed plaintiff with a large central C6 disk/osteophyte complex which he opined was responsible for plaintiff's C6 distribution dysesthesias. He also found a large left-sided C4-5 disk/osteophyte which was currently asymptomatic, left-sided sacroiliac joint pain and coccygodynia (painful tailbone).
13. Dr. Curlee recommended a series of injections in plaintiff's lower back and SI joint to relieve the pain and assist in localizing the source of plaintiff's pain. Due to some adverse experience with reactions to medications in her past, plaintiff declined to submit to the injections at that time. Dr. Curlee recommended that plaintiff undergo a SPECT scan to detect any possible occult fractures that might not be readily apparent on an x-ray.
14. Dr. Curlee continued to treat plaintiff with medication throughout 2002. The SPECT scan was performed in January 2003, and did not reveal any fractures of plaintiff's lumbar spine or pelvis. Dr. Curlee treated plaintiff again on January 30, 2003. Plaintiff reported that her neck pain was somewhat less frequent, but her left side lower back and buttock pain continued.
15. Dr. Curlee opined that plaintiff's neck and low back problems have a "very poor potential to heal" or to "get better on their own" and that plaintiff will continue with intermittent episodes and waxing and waning of both her neck pain and buttock pain.
16. Dr. Curlee stated that it would be reasonable for her to miss work intermittently due to pain in her neck or lower back. He further opined that plaintiff has a significant chance of requiring surgery in the future.
17. The plaintiff testified at the hearing before the Deputy Commissioner that in the summer she normally worked with her husband in their family owned commercial fishing business where she served as his first mate. They performed offshore fishing and netting. Plaintiff had worked in this business for years but as a result of her October 11, 2001 injury, the plaintiff reported being unable to work in their fishing business and that she had to stay at home during the summer of 2002 and rest so she could return to work at school in the fall. Dr. Curlee opined that it was reasonable for plaintiff to stay home and rest and recuperate and to miss work in the fishing business intermittently.
18. Due to plaintiff's medical treatment and pain, she also missed occasional days from work for defendants and used her earned sick leave or vacation time to obtain full wages for those days.
19. The competent evidence in the record establishes that plaintiff elected to be paid her ten month salary over a twelve month period and therefore received a paycheck during the summer months. The competent evidence in the record further establishes that the plaintiff is entitled to receive indemnity during the summer of 2002 when she recuperated from her October 11, 2001 injury by accident and also missed work in her family fishing business which was also a result of October 11, 2001 injury by accident.
20. As of the time the record closed, plaintiff had not reached maximum medical improvement.
21. Defendants have not defended this action unreasonably or without justification.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 115C-337(a) provides the Workers' Compensation Act shall be applicable to all school employees. Liability of the State for compensation shall be confined to school employees paid by the State from State school funds for injuries or death caused by accident arising out of and in the course of their employment in connection with the State-operated school term. The State shall be liable for this compensation on the basis of the average weekly wage of the employees as defined in the Workers' Compensation Act, to the extent of the proportionate part of each employee's salary that is paid from State funds.
2. Pursuant to N.C. Gen. Stat. § 115C-338(b), any employee who sustains an injury as a result of an episode of violence shall be entitled to receive full salary during the shortest of these periods: one year, the continuation of disability, or the time during which the employee is unable to engage in employment because of injury. The statute further provides these benefits shall be in lieu of all other income or disability benefits payable under workers' compensation to such employee only during the period prescribed herein. Thereafter, such teacher shall be paid such income or disability payments to which (she) might be entitled under workers' compensation.
3. On October 11, 2001, plaintiff, while engaged in the course of her employment, sustained an injury resulting from or arising out of an episode of violence. N.C. Gen. Stat. § 115C-338(b).
4. The plaintiff is therefore entitled to her full salary for the time during which plaintiff was unable to engage in her employment with defendants due to her injury which encompasses only the days missed at work for defendants as of the last day of school for the 2001-2002 school year and are to be determined by the parties using defendant's business and personnel records. The evidence does not make clear which days claimed by plaintiff are attributable to be medical visits or from pain resulting from her compensable injuries, but plaintiff's recovery is limited to those days which she would otherwise have been assigned to work and does not include regular vacation days from work. As plaintiff has received full salary for those days by taking earned sick leave or vacation days, she is not eligible for additional compensation for those days, but is entitled to have her earned time returned to her by defendants. N.C. Gen. Stat. § 115C-338.
5. The plaintiff sustained an injury by accident to her hip, pelvic joint, tailbone, neck and back arising out of and in the course and scope of her employment with defendant and as a direct result of a specific traumatic incident of the work assigned on October 11, 2001 and as a result of an episode of violence also on October 11, 2001. N.C. Gen. Stat. § 97-2(6).
6. Plaintiff is entitled to temporary total disability benefits in the amount of $292.29 per week from the period during the summer of 2002 to be determined by the parties using the plaintiff's family owned commercial fishing business records. N.C. Gen. Stat. § 97-29.
7. The plaintiff is entitled to have defendants pay for medical treatment and expenses incurred or to be incurred as a result of plaintiff's compensable injury by accident as may be required to provide relief, effect a cure or lessen the period of disability, including payment to Cape Fear Hospital in the amount of $520.02, but not including reimbursement to plaintiff's attorney for her travel for the taking of medical deposition. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1.
8. Defendants have not defended this action unreasonably or without justification. N.C. Gen. Stat. § 97-88.1.
9. Plaintiff is entitled to an attorney's fee assessed against defendants pursuant to N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff her full salary as compensation due under N.C. Gen. Stat. § 115C-338 for the time during which plaintiff was unable to engage in her employment with defendants due to her injury which encompasses only the days missed at work for defendants as of the last day of school for the 2001-2002 school year and are to be determined by the parties using defendant's business and personnel records.
2. Defendants shall pay temporary total disability benefits to plaintiff at the rate of $292.29 per week for the period during the summer of 2002 to be determined by the parties using the plaintiff's family owned commercial fishing business records.
3. Defendants shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the Act, including payment to Cape Fear Hospital in the amount of $520.02, but not including reimbursement to plaintiff's attorney for her travel for the taking of the medical deposition.
4. Plaintiff is entitled to have her earned time reinstated to her by defendant for time taken for medical treatment or pain.
5. As plaintiff has not reached maximum medical improvement, this Opinion does not address this issue. However, in the event the parties are unable to agree on the amount of permanent partial disability compensation, if any, which may be due plaintiff, either party may request a hearing from the Commission to resolve this issue.
6. Defendants have not defended this action unreasonably or without justification.
7. Defendants shall pay costs of this action, including reasonable attorney fees to plaintiff's attorney which shall be awarded upon the submission of plaintiff's counsel to the undersigned Commissioners of an affidavit showing legal services rendered for that portion of this claim related to the appeal by defendants.
This the ___ day of December 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DISSENTING:
 S/____________ BUCK LATTIMORE CHAIRMAN
PTY:db